# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHEA LINDSAY, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NATIONAL LLOYDS INSURANCE )<br> COMPANY, a foreign corporation, )<br>)<br>Defendant, )<br>)<br>vs. )<br>)<br>MAX STRAIN d/b/a MAX STRAIN )<br> AGENCY, )<br>)<br>Third Party Defendant. ) | NO. CIV-08-1131-D |

## ORDER

Before the Court is the Motion for Summary Judgment [Doc. No. 21] of Defendant National Lloyds Insurance Company ("Lloyds") in which it seeks judgment on all claims asserted by Plaintiff. Also before the Court is Plaintiff's Motion for Partial Summary Judgment [Doc. No. 22].

Plaintiff alleges that, by failing to acknowledge coverage for water damage resulting from a broken pipe in her residence, Lloyds breached the contract of insurance. She also alleges that Lloyds breached its duty of good faith and fair dealing in connection with its denial of her claim. Lloyds argues that the insurance policy covering Plaintiff's home did not include coverage for the loss; it further argues that, even if its decision to deny coverage is ultimately determined to be incorrect, it satisfied its duty to handle her claim in good faith. Lloyds argues the undisputed material facts establish it is entitled to judgment as a matter of law on both claims asserted by Plaintiff. In her motion, Plaintiff contends the undisputed facts establish her entitlement to judgment

on her claim that Lloyds breached the insurance contract; she does not seek judgment on the amount of resulting damages or on her bad faith claim, arguing both present jury questions.

I. Summary judgment standards:

Summary judgment is proper where the undisputed material facts establish that a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)*; Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one which may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). To dispute a material fact, a plaintiff must offer more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict" for her. *Id.* The facts and reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *MacKenzie v. City & County of Denver*, 414 F. 3d 1266, 1273 (10th Cir. 2005).

If the undisputed facts establish that a plaintiff cannot prove an essential element of a cause of action, the defendant is entitled to judgment on that cause of action. *Celotex*, 477 U.S. at 322. However, a defendant need not disprove the plaintiff's claim; it must only point to "a lack of evidence" on an essential element of that claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F. 3d 664, 671 (10th Cir. 1998). The burden then shifts to the plaintiff to go beyond the pleadings and present facts, admissible in evidence, from which a rational trier of fact could find for her; conclusory arguments are insufficient, as the facts must be supported by admissible evidence reflected in affidavits, deposition transcripts, or specific exhibits incorporated therein. *Id.,* at 671-72. It is not the Court's responsibility to attempt to find evidence which could support a plaintiff's position. *Adler*, 144 F. 3d at 672.

II. Undisputed facts in the record:

It is undisputed that Plaintiff had a policy of insurance (the "Policy") issued by Lloyds covering her Guymon, Oklahoma residence. The Policy was designated as No. OH6000524-04, the effective date was August 19, 2007, and the expiration date was August 19, 2008; a copy of the Policy is submitted as Lloyds' Exhibit A. It is also not disputed that the Policy was a "named perils" policy, providing coverage only for specific occurrences listed therein. Pursuant to the express provisions of the Policy, the covered perils are:

1. Fire or lightening;
2. Windstorm or hail;
3. Explosion;
4. Riot or civil commotion;
5. Aircraft;
6. Vehicles;
7. Smoke;
8. Vandalism or malicious mischief;
9. Theft; and
10. Volcanic eruption.

Policy, Lloyds' Exhibit A, p. 7, Section I - "Perils Insured Against." In the Policy, each listed peril includes an explanation of its meaning. The listed perils are also preceded by language stating the ten listed perils are covered "unless the loss is excluded in Section I - Exclusions." *Id.* The Policy also contains a list of exclusions (the "Exclusions"). The list is preceded by the following statement:

> We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

Policy, p. 8. The Exclusions are:

1. Ordinance or Law;
2. Earth Movement;
3. Water Damage;

3

4. Power Failure;
   5. Neglect;
   6. War;
   7. Nuclear Hazard;
   8. Intentional Loss; and
   9. Governmental Action.

*Id.* Each listed Exclusion is followed by a definition and an explanation of its application. Policy, Lloyds' Exhibit A, p. 8.

The only Exclusion at issue in this case is the water damage exclusion. The Policy explains this Exclusion as follows:

> Water Damage means:
>
> a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;
> b. Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or
> c. Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;
>
> caused by or resulting from human or animal forces or any act of nature.
> Direct loss by fire, explosion or theft resulting from water damage is covered.

Policy, Lloyds' Exhibit A, p. 8.

Also included with the Policy is an endorsement entitled, "Limited Fungi, Wet or Dry Rot, or Bacteria Coverage" (the "Endorsement"). Exhibit A, p. 1. Two potential additional areas of coverage are raised by the Endorsement. First, the Endorsement contains a definition of fungi, and then provides an explanation of the applicable coverage, as follows:

> SECTION I - PROPERTY COVERAGES
> E. Additional Coverages
>
> The following Additional Coverage is added:

4

> a. The amount shown in the Schedule above is the most we will pay for:
> (1) The total of all loss payable under Section I - Property Coverages caused by "fungi," wet or dry rot, or bacteria;
>
> (2) The cost to remove "fungi," wet or dry rot, or bacteria from property covered under Section I - Property Coverages;
>
> (3) The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi," wet or dry rot, or bacteria; and
>
> (4) The cost of testing of air or property to confirm the absence, presence or level of "fungi," wet or dry rot, or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi," wet or dry rot, or bacteria.

Endorsement, Lloyds' Exhibit A, p. 1 of 3. Immediately following this explanation of the coverage, the Endorsement states:

> b. The coverage described in 13.a. only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

*Id.*

Additionally, page two of the Endorsement contains the following provision:

> SECTION I - PERILS INSURED AGAINST
>
> 12. Additional Discharge Or Overflow Of Water Or Steam
>
> Paragraph b.(5) in Forms HO 00 02 and HO 00 06 (b.(4) in Form HO 00 04) is deleted and replaced by the following:
>
> (5) To a building caused by constant or repeated seepage or leaking of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence of condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the wals or ceilings or beneath the floors or above the ceilings of a structure.

Endorsement, p. 2.

The parties do not dispute that, on or about April 17, 2008, Plaintiff telephoned Lloyds to

5

report a claim under the Policy; on April 18, 2008, Elizabeth Arroyo ("Arroyo"), a staff adjuster/claims examiner for Lloyds, telephoned Plaintiff to obtain information about her claim. Arroyo affidavit, Lloyds' Exhibit B. Plaintiff told Arroyo that she had sustained water damage at her residence because a pipe had broken. *Id.* Arroyo advised Plaintiff that the Policy did not cover water damage resulting from a broken pipe because such damage was not one of the listed perils covered by the Policy. On April 23, 2008, Arroyo sent Plaintiff a letter formally denying the claim on the basis that damage arising from a broken pipe was not one of the enumerated perils covered by the Policy. A copy of her letter is submitted as Lloyds' Exhibit D. The letter again explained that the Policy is a "named peril policy" which covers only damage resulting from the listed perils; Arroyo explained that the Policy "does not provide coverage for accidental, discharge, leakage, or overflow of water from within plumbing heating or air conditioning systems, or the resulting damage." *Id.*

Plaintiff contacted Max Strain[1], the insurance agent who had sold her the Policy. He disagreed with Arroyo's decision, and contacted Lloyds regarding the claim. Lloyds also advised him that the claimed loss was not a covered peril.

III. Application:

    A. Breach of the insurance policy:

In its summary judgment motion, Lloyds argues Plaintiff cannot, as a matter of law, prevail on her claim that it breached the Policy. According to Lloyds, the Policy shows, on its face, that the loss incurred by Plaintiff is not one of the covered perils and that the exclusion for water damage is applicable. Plaintiff contends, however, that the Endorsement governs her claim, and,

---

[1] Max Strain has been added as a third-party defendant in this action; however, the summary judgment motions are not directed at any claims asserted as a result of his conduct.

specifically, the "Additional Discharge or Overflow of Water or Steam" provision provides coverage.[2]

An insurance policy is a contract, and its provisions are construed according to the rules governing contract interpretation. *May v. Mid-Century Insurance Co.*, 151 P. 3d 132, 140 (Okla. 2006). The interpretation of an insurance contract, and whether it is ambiguous, is determined by the Court as a question of law. *Andres v. Oklahoma Farm Bureau Mut Ins. Co.*, __ P. 3d. ___, 2009 WL 5247409, at *1 (Okla. Civ. App. Aug. 31, 2009) (citing *Dodson v. St. Paul Ins. Co.*, 812 P. 2d 372, 376 (Okla. 1991).

"When addressing a dispute concerning the language of an insurance policy, a court must first determine as a matter of law whether the policy language at issue is ambiguous." *Wynn v. Avemco Ins. Co.*, 963 P. 2d 572, 575 (Okla. 1998). "Policy language is ambiguous if it is reasonably susceptible to more than one meaning on its face." *Dodson*, 812 P. 2d at 376-77. If the policy contains no ambiguity, the Court "must construe its language in accordance with the plain, ordinary meaning of its terms." *Haworth v. Jantzen*, 172 P. 3d 193, 197 (Okla. 2006).

The Court has reviewed the Policy and its terms and concludes that the provisions listing the covered perils are clear and unambiguous. In addition, the Exclusions are unambiguous. Water damage is among the express exclusions, and it is defined in pertinent part as "water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment." Policy, Exclusions, p. 8. This language is not

---

[2]Although Defendant's motion anticipates that Plaintiff will rely on the fungi/wet or dry rot portion of the Endorsement, Plaintiff does not advance that argument.

susceptible of different interpretations, and is not ambiguous.[3]

Notwithstanding the Policy language, however, Plaintiff contends that the Endorsement prevails over the Exclusions and provides coverage for her claim. Lloyds argues the Endorsement is inapplicable to Plaintiff's Policy.

"Endorsements, riders, marginal references, and other similar writings are a part of the contract of insurance and are to be read and construed with the policy proper." 2 Couch on Insurance § 21:21 (3d ed. 2009). Under Oklahoma law, an insurance contract "shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application attached to and made a part of the policy." Okla. Stat. tit. 36 § 3621.

As an initial matter, the Court notes that the Endorsement at issue, although included as part of Plaintiff's Policy, expressly states that the additional coverage it provides for a loss attributable to "fungi," wet or dry rot, or bacteria, "only applies when such loss or costs are a result of a Peril Insured Against." Policy, Lloyds' Exhibit A, Endorsement, p. 1 of 3. Accordingly, the terms of the Endorsement require that coverage for fungi and related occurrences result from one of the nine perils expressly set forth in the Policy. *See* Policy, p. 7 of 17. As water damage is not one of the listed perils, the fungi/wet or dry rot provision cannot provide coverage here.

The thrust of Plaintiff's position, however, is that the provision on page 2 of the

---

[3]There is a least some question whether this exclusion is applicable to the instant facts. The involved pipe is described in Plaintiff's affidavit as "a water line in a wall in a bathroom above the basement." Plaintiff's Exhibit 3 to summary judgment motion. Nevertheless, the Exclusion becomes pertinent only if water damage is determined to be a covered peril, which in turn depends upon the interpretation of the Endorsement, addressed *infra*.

8

Endorsement related to covered perils and purporting to add "discharge or overflow of water or steam" as a peril covered by her policy provides coverage here. That provision, however, clearly and unambiguously states that its language is to be substituted for designated paragraphs in Forms HO 00 02, HO 00 06, and HO 00 04. Plaintiff's policy is Form HO 00 08. Thus, the substitute language does not apply to Plaintiff's policy, and does not therefore expand its covered perils.

Plaintiff's argument that language at the top of the Endorsement stating that it may be used with all policy forms except HO 00 03 and HO 00 05 creates an ambiguity is not persuasive. Indeed, the Endorsement was not used with those forms, but with Form HO 00 08.

That Plaintiff's policy was a form unaffected by the "Additional Discharge Or Overflow Of Water Or Steam" provision is apparent from the declarations page (where the box for Form "08(8)" is checked), and from the basic policy itself, which reflects on each of its pages "HO 00 08 10 00." Furthermore, the "Additional Discharge Or Overflow of Water Or Steam" provision expressly states that the language therein replaces existing language in specifically identified existing paragraphs in Forms HO 00 02, HO 00 04, and HO 00 06. It does not purport to change any paragraph in Form HO 00 08. One cannot reasonably read the language of the Endorsement relied upon by Plaintiff without recognizing that it applies only to the specified forms. A limited perusal of the remainder of the Policy would confirm to the ordinary reader that its basic form was other than those listed.[4]

Accordingly, the Court agrees with Lloyds that the Endorsement upon which Plaintiff relies

---

[4]"It is the duty of the insured to read and know the contents of the policy before he accepts it, and where he fails or neglects to do so he is estopped from denying knowledge of its terms and conditions, unless he alleges and proves that he was induced not to read the policy by trick or fraud of the other party." *Hill v. Agri-Risk Services,* 827 P.2d 904, 906 n.3 (Okla.Civ.App. 1992) (citing *National Fire Ins. Co. Of Hartford v. McCoy*, 239 P.2d 428, 430 (Okla. 1952)(citations omitted)).

does not, as a matter of law, provide coverage for her claimed loss. Lloyds is entitled to judgment as a matter of law, and its Motion [Doc. No. 21] is GRANTED on Plaintiff's breach of insurance contract claim; Plaintiff's Motion [Doc. No. 22] is DENIED.

B. Breach of the duty of good faith and fair dealing:

Assuming that Plaintiff's bad faith claim can survive the ruling that no coverage existed here, the Court turns its attention to that claim. Plaintiff alleges that, in handling and denying her claim, Lloyds breached its duty of good faith and fair dealing. Lloyds argues that the undisputed facts establish it is entitled to judgment on this claim.

Under Oklahoma law, an insurer has an implied duty to deal fairly and act in good faith toward its insured; the violation of that duty gives rise to an action in tort. *Badillo v. Mid Century Ins. Co.*, 121 P. 3d 1080, 1093 (Okla. 2005); *Christian v. American Home Assurance Co.*, 577 P.2d 899, 904 (Okla. 1977). "The essence of an action for breach of the duty of good faith and fair dealing" is the unreasonableness of the insurer's actions. *Badillo*, 121 P. 3d at 1093; *Conti v. Republic Underwriters Ins. Co.* 782 P.2d 1357, 1360 (Okla.1989) (citing *McCorkle v. Great Atlantic Insurance Co.,* 637 P.2d 583 (Okla. 1981)). The "decisive question" is whether, at the time its performance was requested, the insurer had a "good faith belief ... that it had justifiable reason" for its decision. *Buzzard v. Farmers Insurance Co.*, 824 P.2d 1105, 1109 (Okla. 1991). "Bad faith cannot exist if an insurer's conduct was reasonable under the circumstances." *Barnes v. Okla. Farm Bureau Mut. Ins. Co.*, 11 P.3d 162, 170-171 (Okla.2000). *See also Southern Hospitality, Inc. v. Zurich American Ins. Co.* 393 F. 3d 1137, 1142 (10th Cir. 2004). "The decisive question is whether the insurer had a good faith belief, <u>at the time its performance was requested,</u> that there was a justifiable reason" for its decision. *Wolf v. Prudential Ins. Co. of America*, 50 F.

3d 793, 798 -799 (10th Cir. 1995) (emphasis added) (citing *Willis v. Midland Risk Ins. Co.*, 42 F. 3d 607, 612 (10th Cir.1994) and *Oulds v. Principal Mutual Life Insurance Co.*, 6 F. 3d 1431, 1437 (10th Cir. 1993)).

The tort of bad faith does not foreclose the insurer's right to deny a claim, resist payment, or litigate any claim to which the insurer has a legitimate defense. *Ball v. Wilshire Ins. Co.*, 221 P. 3d 717, 725 (Okla. 2009); *Buzzard,* 824 P. 2d at 1109. "'Resort to a judicial forum is not *per se* bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit.'" *Ball*, 221 P. 3d at 725 (quoting *Buzzard*, 824 P. 2d at 1109). Oklahoma law recognizes that there may be disputes between an insurer and its insured regarding a variety of matters, including coverage, cause and amount of loss, or policy conditions. *McCorkle,* 637 P.2d at 587.

This Court's task, when presented with a motion for summary judgment on an insured's claim for bad faith, has been explained by the Tenth Circuit as follows:

> A jury question arises only where the relevant facts are in dispute or where the undisputed facts permit differing inferences as to the reasonableness and good faith of the insurer's conduct. On a motion for summary judgment, the trial court must first determine, under the facts of the particular case and as a matter of law, whether insurer's conduct may reasonably be perceived as tortious. Until the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed.

*Oulds*, 6 F. 3d at 1436-37 (citations omitted).

In this case, the undisputed facts in evidence reflect that, when Plaintiff contacted Lloyds to present a claim for water damage resulting from a broken pipe, claims adjuster Arroyo correctly explained to Plaintiff that such damage is not one of the listed perils covered by the Policy. Lloyds' reliance on the express terms of the Policy in this regard does not reflect bad faith or unfairness.

Plaintiff contends that Lloyds acted in bad faith by relying on the water damage exclusion without considering the possibility that coverage would be available through the Endorsement. The Court has ruled, however, that Lloyds' interpretation that the Policy did not provide coverage for the involved peril was correct.

Even if the Court had ruled Plaintiff was entitled to coverage, however, that result would not compel a finding that Lloyds acted in bad faith in its interpretation of the Policy. An insurer does not act in bad faith where it legitimately disputes the interpretation of an insurance policy. *Duensing v. State Farm Fire and Casualty Company*, 131 P. 3d 127, 138 (Okla. Civ. App. 2005). In *Duensing*, the jury found the insurer liable for both breach of a homeowners' insurance policy containing exclusions and for bad faith in handling the claim. On appeal, the Court of Appeals agreed that the trial court had properly submitted to the jury the breach of insurance contract claim. However, it found the trial court erred in denying the insurer's motion for a directed verdict on the bad faith claim. In reaching that decision, it noted the insurer's denial of the claim was based on its interpretation of several exclusions in the policy. Although those exclusions were ultimately found to be inapplicable, the insurer's reliance on the exclusions, at the time it denied coverage, did not constitute bad faith as a matter of law. *Id.*

In *Andres, supra,* the Oklahoma Court of Appeals reached the same conclusion in a case involving a claim for damage resulting from sewage backup. The insurer relied on an exclusion in the policy when it denied the claim. The appellate court found that, contrary to the insurer's contention, the exclusion did not apply to the facts presented. However, the insurer did not act in bad faith in relying on the exclusion; there was no conclusive precedent precluding its application, and the insurer did not act unreasonably in its decision to litigate the claim. *Andres*, ___ P. 3d at

12

___, 2009 WL 5347409, at *4.

In this case, the evidence before the Court establishes that Lloyds' reason for denying Plaintiff's claim was the fact that the damage she reported was not among the perils covered by the Policy; furthermore, water damage was among the Exclusions in the Policy, and the Endorsement did not apply. The Court agrees with the Oklahoma Court of Appeals' decisions that such reliance is not unreasonable or a basis for finding bad faith.

Plaintiff also contends that Lloyds acted in bad faith by not conducting a proper investigation of her claim. In Oklahoma, the insurer's duty to act reasonably extends to the manner in which the insurer investigates an insured's claim. *Buzzard,* 824 P.2d at 1109. An insurer has a duty to "conduct an investigation reasonably appropriate under the circumstances." *Id.* However, that duty is not unlimited, and is judged according to the circumstances. *Roberts v. State Farm Mutual Automobile Insurance Company*, 2003 WL 1559155 **4 (10th Cir. Mar. 26, 2003) (applying Oklahoma law). In *Roberts*, the plaintiff argued that the insurer acted in bad faith by failing to conduct a reasonable investigation because it could have obtained additional information from medical providers which would have presented sufficient information to support the plaintiff's claim. The Circuit rejected that contention, finding that, under Oklahoma law, "an insurer's investigation need only be reasonable, not perfect." *Id.* (citing *Buzzard*, 824 P. 2d at 1109).

In this case, Lloyds was not required to conduct an investigation to determine whether Plaintiff's reported water damage resulting from a broken pipe might have been caused by some other event listed as a covered peril in the Policy. Nor was it required to investigate in an effort to find a basis to extend coverage for the damage she reported, especially when the Policy

expressly excluded the damage Plaintiff reported. The Court concludes that, as a matter of law, Lloyds did not act in bad faith in failing to more extensively investigate Plaintiff's claim.

Accordingly, the undisputed facts in the record before the Court establish that, as a matter of law, Lloyds is entitled to judgment on Plaintiff's claim that it breached its duty of good faith and fair dealing.

IV. Conclusion:

For the foregoing reasons, Lloyds' Motion [Doc. No. 21] is GRANTED as to Plaintiff's claim for breach of the insurance contract and her claim for breach of the duty of good faith and fair dealing. Plaintiff's Motion [Doc. No. 22] is DENIED. The case will proceed accordingly

IT IS SO ORDERED this 29th day of March, 2010.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE